THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| TSHINDE TURMON | ) JURY TRIAL DEMANDED |
| Plaintiff, | ) |
| | ) CASE NO.: 1:26-cv-01796-MGL-PJG |
| v. | ) |
| | ) |
| CAPITAL ONE BANK (USA) N.A. | ) |
| Defendant. | ) |

RCVD - USDC COLA
MAY 1 '26 PM 12:40

## COMPLAINT

### I.    INTRODUCTION

1. This is an action for actual, statutory, punitive damages and costs brought by Plaintiff, Tshinde Turmon, an individual consumer, against Defendant Capital One Bank (USA) N.A., for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2. In this case, Defendant Capital One Bank (USA) N.A. (hereinafter "Capital One") erroneously furnished inaccurate, derogatory information that was reported on Plaintiff's consumer report. Plaintiff disputed the completeness and accuracy of the information with one of the major consumer reporting agencies, "TransUnion".

3. Moreover, Defendant Capital One failed to properly investigate and correct its data. Therefore, violating 15 U.S.C. § 1681s-2(b).

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. § 1681p *et seq.*

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), being that the acts and transactions occurred here and the Defendant transacts business here.

## III. PURPOSE OF THE FAIR CREDIT REPORTING ACT

6. Consumer credit plays a major role in the lives of American consumers, entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment, income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

7. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

8. The FCRA was created to "ensure fair and accurate credit reporting." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

9. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of faults or incomplete information in a credit report," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968))

10. Senator Proxmire listed 5 types of abuses requiring Congressional response, including biased information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec.2411 (Jan. 31, 1969)).

11. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

12. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

13. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's creditworthiness but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living are not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003, but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

### IV.   PARTIES

15. Plaintiff is a natural person who resides in Aiken County, South Carolina, Plaintiff is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

16. Upon information and belief, Defendant Capital One's main headquarters is located at 1680 Capital One Drive, McLean, VA 22102.

17. Upon information and belief, Defendant Capital One is a furnisher governed by 15 U.S.C. § 1681s-2(b).

## V.     FACTUAL ALLEGATIONS

18. Defendant, Capital One, is a furnisher of information to consumer reporting agencies and reported a consumer credit tradeline to TransUnion regarding an alleged credit card account purportedly owed by Plaintiff.

19. In early April 2026, Plaintiff reviewed his TransUnion credit report and identified issues with the completeness and accuracy of the information being reported by Defendant.

20. In early April 2026, Plaintiff submitted a dispute to TransUnion concerning the completeness and accuracy of the account's payment history and status as reported by Defendant.

21. In late April 2026, Plaintiff received reinvestigation results indicating that Defendant had verified the disputed information without making corrections. *(See Exhibit A)*

22. Following the reinvestigation, Defendant continued to report information that is inconsistent and misleading. *(See Exhibit B)*

23. Defendant is reporting a Date Closed of July 5, 2025, while also reporting a Date Paid and Last Payment Made of August 29, 2025.

24. The reported dates reflect that the account was closed prior to the date it was allegedly paid, creating an inconsistent and illogical account timeline.

25. Defendant is reporting the account as "Paid, Closed; was Paid as agreed," while also reporting late payments within the payment history, including 30-day delinquencies.

26. The simultaneous reporting of late payments and a "paid as agreed" status presents conflicting information regarding the performance of the account.

27. Defendant verified the accuracy of the account to TransUnion despite the presence of these internal inconsistencies.

28. Defendant did not conduct a reasonable investigation of Plaintiff's dispute, as demonstrated by its continued reporting of conflicting and misleading information after the reinvestigation.

29. Defendant's reporting does not reflect maximum possible accuracy, as it includes contradictory dates and inconsistent account status information.

30. After the dispute, Defendant continued to furnish updated information to TransUnion, maintaining the same inconsistencies in the reporting.

31. Defendant included a remark indicating the account was previously in dispute and now resolved, despite the continued presence of unresolved inconsistencies.

32. As a result of Defendant's conduct, Plaintiff has been harmed by the continued reporting of inaccurate and misleading information.

33. On or about April 28, 2026, Plaintiff applied for a residential mortgage loan and was denied credit based in whole or in part on information contained in his consumer report, including derogatory and delinquent account history. *(See Exhibit C)*

34. Payment history makes up 35% of the FICO score, so it has a significant impact on the Plaintiff's creditworthiness. If payments are not reported accurately, it could cause Plaintiff's FICO score to be lower than it should be.

35. It's clear that Capital One does not conduct a substantive review of any sort to determine whether or not the information in its computer system is accurate.

36. Upon learning that Plaintiff was disputing the completeness and accuracy, the CRA sent an automated consumer dispute verification request to Capital One, asking it to investigate the dispute. Upon receipt of the request, Capital One was obligated to conduct a reasonable investigation as to its reporting on the account. However, Capital One failed and refused to conduct a reasonable investigation, and instead merely arbitrarily verified its reporting as correct.

37. Capital One willfully, intentionally, recklessly, and negligently repeatedly failed to follow procedures to correct inaccurate credit information.

38. Defendant Capital One is a subscriber to the CRAs. As such, Defendant electronically transmits its customers' account information to CRAs at least once a month. Each such transmission includes changes, additions, and deletions of customers' account information.

39. Plaintiff's account history was included in each of Defendant's monthly transmissions of information to the CRAs.

40. Each time Plaintiff lodged a dispute with the CRA, the CRA contacted Capital One by electronically sending it an Automatic Consumer Dispute Verification (ACDV). The ACDV notified Defendant that Plaintiff was disputing its credit reporting on the account.

41. Upon receipt of the ACDV, it was required to conduct a reasonable investigation of the dispute and then report the results to the CRA. The CRA, in turn reported the results to Plaintiff.

42. Defendant failed to conduct a reasonable investigation concerning the dispute.

42. When Defendant transmitted the account information, it knew that the CRAs would sell the loan information to anyone who had a permissible purpose for obtaining the credit information and who was willing to pay the CRAs' fees. Such persons include banks, finance companies, and other creditors.

43. Potential credit grantors who were considering extending credit to Plaintiff sought and obtained Plaintiff's credit reports from one or more of the CRAs.

44. During the past year preceding the complaint filing in this action, various credit grantors obtained Plaintiff's credit reports, including Capital One's incomplete and inaccurate reports.

45. Each time a CRA sold a copy of Plaintiff's credit reports to a potential credit grantor, Plaintiff was damaged. Each sale was a separate publication of Capital One's inaccurate, incomplete, and misleading credit reports.

46. Credit scores are used by credit grantors to decide whether to extend credit. The credit scores are primarily based on the contents of consumers' credit reports as published by the CRAs.

## VI. ACTUAL DAMAGES

47. Plaintiff has suffered emotional distress, anxiety, hopelessness, anger, nausea, headaches, loss of sleep, despair, fear of never being able to get her credit reports accurate, humiliation, and embarrassment, amongst other negative emotions.

48. Plaintiff has also incurred out-of-pocket loss as a result of Defendant's inaccurate and incomplete credit reporting in the form of postage and loss of productive time.

49. As a result of Defendants' inaccurate furnishing/reporting, Plaintiff has suffered a reduced FICO score.

### VII. CAUSE OF ACTION CLAIMED BY PLAINTIFF

**VIOLATION OF THE
FAIR CREDIT REPORTING ACT
15 U.S.C. § 1681s-2(b)**

50. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein

51. The FCRA requires a furnisher, such as Capital One Bank, to respond after receiving notice from a credit reporting agency that a consumer disputes the completeness and accuracy of information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided inaccurate information. As well as notating the tradeline as disputed.

52. Capital One violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s–2(b):

a) Failing to conduct a proper investigation with respect to the disputed information, in violation of 15 U.S.C. § 1681s–2(b)(1)(A);

b) Failing to review all relevant information provided by the consumer reporting agency, in violation of 15 U.S.C. § 1681s–2(b)(1)(B);

c) Failing to report the results of the investigation to the consumer reporting agency, in violation of 15 U.S.C. § 1681s–2(b)(1)(C);

d) Failing to report accurate information to the consumer reporting agencies after a dispute, in violation of 15 U.S.C. § 1681s-2(b)(1)(D);

e) Failing to have a procedure to modify the information in their system and report substantial disputed information with consumer reporting agencies through the efforts of collecting or referring to account-level documentation, in violation of 15 U.S.C. § 1681s–2(b)(1)(E);

f) willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s–2(b); and

53. As a result of Defendants' violations of the FCRA, Plaintiff has suffered actual damages not limited to the detriment of her FICO score, emotional distress, embarrassment, mental anguish, and anxiety in an amount to be determined by the Court.

54. Defendants' conduct, actions, and inactions were willful, rendering them liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

55. Alternatively, Defendants' violations were negligent, rendering it liable for damages under 15 U.S.C § 1681o.

56. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## VIII. JURY DEMAND AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

a) Awarding Plaintiff actual damages, including but not limited to damages resulting from the denial of credit, damage to creditworthiness, and emotional distress;

b) Awarding Plaintiff statutory damages pursuant to 15 U.S.C. § 1681n;

c) Awarding Plaintiff punitive damages for Defendant's willful noncompliance with the Fair Credit Reporting Act;

d) Awarding Plaintiff pre-judgment and post-judgment interest as permitted by law;

e) Awarding Plaintiff costs of this action; and

f) Awarding such other and further relief as the Court deems just and proper.

Dated: May 1st, 2026

Respectfully Submitted,

Tshinde Turmon

423 Carpentersville Rd.

North Augusta, South Carolina 29841

Email: tj_turmon@yahoo.com